### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT BOWLING GREEN

**ANDRE WILLIS**
    Petitioner

**v.**	No. 5:07CV-00157-R

**STEVE HANEY, Warden**
    Respondent

### MAGISTRATE JUDGE'S REPORT
### and RECOMMENDATION

The petitioner has filed a <u>pro-se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Entry No. 1). This matter is before the court upon the motion of the respondent for summary judgment, or alternatively, to dismiss, to which the petitioner has not responded in opposition (Docket Entry No. 11). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The petitioner was convicted in the Christian Circuit Court of one count of murder and one count of wanton murder and received a sentence of life imprisonment without parole for 25 years. The petitioner's convictions were affirmed upon direct appeal by the Supreme Court of Kentucky. *Willis v. Commonwealth*, No.1996-SC-0725-MR, slip op. (Ky. Sept. 28, 2000). Thereafter, the petitioner filed a motion for collateral relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42). The trial court denied the motion, and the denial was affirmed upon appeal by the Kentucky Court of Appeals. *Willis v. Commonwealth*, 2007 WL 2019750.

The petition presents twelve claims. The first eight were considered by the Kentucky Supreme Court on direct appeal and the last four were considered by the Kentucky Court of Appeals in connection with the petitioner's collateral attack. Therefore, the petitioner has exhausted available state remedies.

## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). The petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct. See 28 U.S.C. § 2254(e)(1) and *McAdoo v. Elo*, 365 F.3d 487, 493-494 (6th Cir., 2004).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case. Id. In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Id. The court may

look to lower courts of appeals' decisions, not as binding precedent, but rather to conduct the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir., 2003).

### Claim 1

In his own words, the petitioner's first claim is as follows (Docket Entry No. 1, page 1 of supplement):

> Denied right to complete defense, as well as the right to due process and a fair trial when the trial court failed to permit introduction of evidence of threats made against petitioner, and the victim's character, establishing fear petitioner had of decedent, and failed to permit evidence of petitioner's character.

In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found the claim to be without merit for the following reasons:

> ... Appellant argues the trial court impermissibly infringed upon his right to fully present a self-protection defense by prohibiting him from introducing: 1) evidence of threats Brown [i.e., the victim] made against him; evidence of Brown's and Bonner's [i.e., the other victim's] character, reputation, and propensity for violence, including evidence of their drug-dealing; and 3) evidence of Appellant's character for being a law-abiding citizen. Appellant's arguments are wholly without merit. First, the record shows that no fewer than five witnesses, including Appellant himself, were permitted to testify they heard Brown threaten to fight, kill, or otherwise harm Appellant. Next, while it is true the trial court initially indicated its skepticism about the relevance of evidence of the victims' drug dealings, it ultimately permitted the introduction of a significant amount of evidence on this point. For example, the jury heard that the victims frequently spent time socializing in a high drug-trafficking area, that the $894.00 in cash and a small black tube found on Brown's body tested positive for cocaine residue, that the $765.00 in cash found on Bonner's body tested positive for cocaine residue, that Bonner had a plastic bag containing eighteen pieces of cocaine in his possession when he was shot, and that a toxicology report showed Brown tested positive for ethanol but not drugs at the time of his death and Bonner tested positive for cocaine but not alcohol at the time of his death. As for other evidence pertaining to the victims' character, reputation, and propensity for violence, the jury heard, among other things, that both Brown and Bonner frequently carried guns, that Brown did not have a good reputation in the community, and that Appellant feared Brown because Brown bragged about having shot and beaten people and about having gone to prison. While the trial court did, in its discretion, limit the amount of evidence relating the victims' drug dealings, the

> minor limitations imposed by the trial court did not impair Appellant's assertion of the defense of self-protection.
>
> Appellant next claims the trial court improperly precluded him from testifying that he had never been convicted of a felony. Appellant is correct in his assertion that KRE 404(a)(1) entitles the accused to present evidence of his good moral character. However, pursuant to KRE 405(a), the only proper method by which good moral character may be proved is "by testimony as to general reputation in the community or by testimony in the form of an opinion." The excluded testimony had nothing to do with Appellant's general reputation, nor was it opinion testimony, and thus it was properly excluded. Just as the Commonwealth may not introduce evidence of a defendant's prior convictions to prove his character for lawlessness, a defendant may not present his lack of a criminal record as evidence of his innocence.

The magistrate judge concludes that the state court's adjudication of the petitioner's first claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1. To the extent the petitioner's claim is premised upon an erroneous ruling by the trial judge under the Kentucky Rules of Evidence, the issue is not cognizable in a federal habeas corpus petition. See 28 U.S.C. § 2254(a) (a federal court may "entertain an application for a writ of habeas corpus ... only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

2. An issue concerning admissibility of evidence does not rise to the level of constitutional magnitude unless it was so egregious that the petitioner was denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir., 2004). In determining whether the petitioner was denied a fundamentally fair trial, the court should consider the extent to which the evidence in question was "critical" to the petitioner's defense, was "exculpatory, and bore "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir., 1994) quoting *Chambers v. Mississippi*, 410 U.S. 284 (1973).

3. The evidence concerning the petitioner's good character and the bad character of the victims was not "critical" to the petitioner's defense because it was cumulative in terms of evidence that the trial judge allowed.

4. The evidence was not "exculpatory" because it suggests that the victims came looking for the petitioner, who then acted out of fear and self-preservation, whereas the evidence presented at trial was that the petitioner drove his vehicle up to where the victims were standing, shone his headlights on them, pulled a gun from his glove compartment, got out of the car, yelled "How you want it motherf-----!," and began shooting until his gun jammed.

**Claim 2**

The petitioner's second claim pertains to the jury instructions that resulted in his conviction for wanton murder of Darryl Bonner. In the petitioner's own words, the claims are as follows (Docket Entry No. 1, page 1 of supplement):

> Petitioner was denied due process and a right to a fair trial under the 6th and 14th Amendments to the U.S. Constitution when the trial court instructed the jury on Wanton Murder as to Darryl Bonner.

In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found the claim to be without merit for the following reasons:

> ... Appellant argues the trial court erred in instructing the jury on wanton murder as to Darryl Bonner. His argument is based on the holding of *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518 (1994), which precluded the giving of an instruction on wanton murder in cases where the defendant admits to killing the victim but attempts to justify the act by claiming self-defense. Appellant's argument must fail for two reasons. First, Appellant never claimed he shot Bonner in self-defense. Rather, he testified he shot <u>Brown</u> in self-defense, but stated that he never saw Bonner, he did not know how Bonner was shot, and he didn't realize Bonner had been shot until he saw it on the news. Thus, the holding of *McGinnis* simply does not apply to the facts of the instant case. Secondly, in *Elliot v. Commonwealth*, Ky., 976 S.W.2d 416, 422 (1998), this Court overruled "that portion of *McGinnis* which holds that an assertion of self-defense or another KRS Chapter 503 justification precludes an instruction on wanton murder as an alternative

5

> to intentional murder." The trial court properly instructed the jury on every state of the case deducible from the evidence, including wanton murder.

The magistrate judge concludes that the state court's adjudication of the petitioner's first claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show 1) that they instructions are undesirable, erroneous, or universally condemned and 2) taken as a whole, they are so infirm as to render the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

2. The petitioner has not shown that the instructions were either erroneous or so erroneous as to render the trial fundamentally unfair. Characterization of the killing of a person one does not realize is present in the process of killing another person whom one intends to kill as "wanton murder" accords with a basic sense of fairness.

### Claims 3 and 4

The petitioner's third and fourth claims also pertain to the jury instructions that resulted in his conviction for wanton murder of Darryl Bonner. The petitioner argues that the trial court erred in failing to instruct on complete and imperfect self-protection (claim 3) and on self-defense as a complete defense (claim 4). In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found the claims to be procedurally defaulted and without merit for the following reasons:

> In his next two claims of error, Appellant contends the trial court erred in failing to instruct the jury on both "complete" and "imperfect" self-protection in the killing of Darryl Bonner. See KRS 503.050. This argument is not preserved for our review, because Appellant's only formal objection to the instructions as to Darryl Bonner pertained to the giving of a wanton murder instruction. Appellant now argues that

> because Brown and Bonner were both aggressors acting in concert, he was entitled to a self-defense instruction regarding his acts toward Bonner. See *Hayes v. Commonwealth*, Ky., 870 S.W.2d 786 (1993). As support for his contention that Brown and Bonner were both aggressors acting in concert, Appellant notes that Bonner was present during every altercation between Brown and Appellant, and it was Bonner who was summoned to retrieve a drunken and hostile Brown from the Harris home on the night preceding the shootings. This evidence in no way resembles the factual scenario set forth in Hayes, where the victims were both aggressors involved in the armed robbery of a liquor stores, and it falls far short of establishing that Bonner was an aggressor acting in concert with Brown. More importantly, Appellant never claimed he feared Bonner and shot him in self-defense. Rather, he claimed he never saw Bonner that evening, had no idea how Bonner was shot, and "didn't have any confrontation with Darryl Bonner, so [he] had no reason to shoot him." Based on Appellant's own testimony, Bonner was an innocent victim of his shooting "showdown" with Brown. The belief, whether reasonable or unreasonable, in the need for self-protection against an attacker will never serve to justify the unintentional killing of an innocent bystander. KRS 503.120(2); *Phillips v. Commonwealth*, Ky., 17 S.W.3d 870, 875 (2000). There was no error in the failure to instruct the jury on self-defense as to Bonner's killing. This is especially true given that no such instruction was ever requested.

The magistrate judge concludes that the state court's adjudication of the petitioner's claims was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the undersigned has been guided by the following principles:

1. State courts need not fear having their decisions effectively overturned by a federal habeas court due to the state court's reaching the merits of a constitutional claim and finding in the alternative that the claim is procedurally defaulted under state law. It was explained in *Harris v. Reed*, 489 U.S. 255 n. 10 (1989) as follows:

> [A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. . . . In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

2. The claim was procedurally defaulted under state law, and may not now be considered by this federal habeas court. "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir., 2003) quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Particularly important in this matter is that to be "fairly presented" the federal ground must also be presented under the same theory as presented to the state court. *Caver* at p. 346. "Relatedness of the issues ... does not save [petitioner's] claim." *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir., 2001).

3. While trial counsel may have raised a contemporaneous objection in general terms to the jury instructions concerning wanton murder, counsel did not object to the lack of a self-protection instruction or argue the theory that the petitioner is now arguing. Therefore, the state court's reliance upon the petitioner's procedural default constitutes an independent and adequate ground under state law for this federal habeas court to decline to reach the constitutional merits.

4. Even if the state court found that the claim had been adequately presented as a matter of state law, the petitioner has fail to show an error of constitutional magnitude and, indeed, has failed to show any error at all.

5. If, as a matter of state law, the facts of the case do not raise a valid claim of self-defense, no self-defense instruction is constitutionally necessary. *Taylor v. Withrow*, 288 F.3d 846, 853-854 (6th Cir., 2002).

### Claim 5

The petitioner's fifth claim is as follows (Docket Entry No. 1, page 3 of supplement):

Petitioner was denied due process and a right to a fair trial guaranteed under the 6th and 14th Amendments of the U.S. Constitution when the trial court gave an

8

> instruction which qualified and limited petitioner's right to self-protection as to Deandre Brown, it erred to petitioner's substantial prejudice because there was no evidence to support the theory that petitioner was the initial aggressor or that he provoked Brown.

In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found the claim to be without merit for the following reasons:

> Appellant next argues the trial court erred to his substantial prejudice when, in its instructions to the jury, it limited Appellant's right of self-protection as to Deandre Brown with a "first aggressor" qualification pursuant to KRS 503.060(3). Appellant contends the evidence at trial unequivocally indicated Brown was the initial aggressor, and that the evidence could not possibly support the notion that Appellant initiated the fatal confrontation. While the jury could have believed Appellant's testimony that Brown pointed a gun at him, it could also have concluded that Appellant was the aggressor that night. Several witnesses stated that Appellant drove up to where Brown and Bonner were standing, shone his headlights on them, got out of the car, yelled "How you want it motherf-----!" and began shooting until his gun jammed. This is certainly sufficient evidence to support an "initial aggressor" qualification to the self-protection instruction.

The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

In so finding, the magistrate judge observes that in his memorandum (Docket Entry No. 1, pages 3 and 4 of supplement), the petitioner focuses upon the "threats" and "harassment" of the victims toward him the day before the shooting. The petitioner fails to recognize that these threats and harassment did not excuse his conduct on the day of the shooting and somehow render him not the "initial aggressor."

**Claim 6**

The petitioner's sixth claim is as follows (Docket Entry No. 1, page 4 of supplement):

> Petitioner was denied due process and a right to a fair trial under the 6th and 14th Amendments of the U.S. Constitution when the trial court required James Lindsey, over defense objection, to testify about how trial counsel knew to talk with him regarding the whereabouts of the contested gun of Deandre Brown.

In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found the claim to be procedurally defaulted for the following reasons:

> Next, Appellant contends the trial court erred by requiring a witness, James Lindsey, to answer a question from the prosecution regarding how defense counsel knew Lindsey had certain information. The contention is without merit. The question itself was not improper. Once the witness answered that he did not know how counsel became aware of him, the defense could have objected to further questioning on that topic. While the defense did object upon the prosecution's initial asking of the question, it did not object to further questioning once Lindsey answered that he did not know. Thus, the issue is not preserved for our review and we need no discuss it on the merits.

The magistrate judge concludes that the state court's reliance upon the petitioner's procedural default constitutes an independent and adequate ground under state law for this federal habeas court to decline to reach the constitutional merits.

### Claim 7

The petitioner seventh claim is as follows (Docket Entry No. 1, page 5 of supplement):

> Petitioner was denied due process and a right to a fair trial under the 6th and 14th Amendments of the U.S. Constitution when the trial court failed to excuse juror Wells for cause because of defense counsel having defended the man who killed her son, as requested by the defense.

In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found that the trial judge did not abuse his discretion in declining to dismiss the juror for cause. According to the respondent, the record reflects that the petitioner eventually eliminated the juror by use of a peremptory strike (A 234) (Docket Entry No. 11, p. 21). According to the petitioner, "trial counsel had been forced ... to use one of its peremptory challenges to strike her from the jury" (Docket Entry No. 1).

*Ross v. Oklahoma*, 487 U.S. 81 (1988), held as follows:

> Peremptory challenges are not of constitutional dimension. They are a means to achieve an impartial jury. So long as the jury that sits is impartial, the fact that the defendant has to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

Similarly, it has been held that "a defendant's exercise of peremptory challenges ... is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000). In such cases, "the system worked precisely as intended." *United States v. Quinn*, 230 F.3d 862 (6th Cir., 2000). The magistrate judge concludes that the petitioner waived any constitutional complaint with respect to the juror by removing her through a peremptory strike.

## Claim 8

The petitioner's eighth claim is that he was "denied due process and a right to a fair trial under the 6th and 14th Amendments of the U.S. Constitution when the trial court failed to excuse juror Penny Jones for cause" (Docket Entry No. 1, page 6 of supplement). In affirming his convictions upon direct appeal, the Supreme Court of Kentucky found the claim to be without merit for the following reasons:

> ... Ms. Jones disclosed on her personal data questionnaire that her aunt married the prosecutor's brother, and that she attended the same church as the prosecutor. Appellant argues this tenuous connection to the prosecutor required the trial court to excuse Jones from the jury for cause. We disagree. Unlike the case of *Thomas v. Commonwealth*, Ky., 864 S.W. 2d 252, 257 (1993), wherein we held a juror should have been excused for cause because he was married to the first-cousin of the prosecutor, here, the juror's relationship to the prosecutor was not nearly so close and thus did not mandate her dismissal for cause. See George v. Commonwealth, Ky., 885 S.W.2d 938, 941 (1994).

The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

11

According to the respondent, trial counsel neither moved to strike Ms. Jones for cause nor eliminated her through a peremptory strike (A 216) (Docket Entry No. 11, p. 23).  In this situation, the petitioner must show that the trial judge committed "manifest error" by failing to find that Ms. Jones was "actually biased."  *Miller v. Webb*, 385 F.3d 666, 674 (6th Cir., 2004).  Rather than demonstrating "actual bias," the petitioner engages in wild speculation that patronizingly portrays Ms. Jones as a one-dimensional person who is incapable of engaging in critical thought, to-wit (Docket Entry No. 1):

> Ms. Jones should have been stricken for cause based on the strength of the relationship between Ms. Jones and her aunt.  Ms. Jones, from the days of being a small child, doted upon her aunt.  Thus, it is reasonable to assume Ms. Jones' deference to the prosecution as being inherently "good," and for criminal defendants as being inherently "evil," as evidenced by Ms. Jones' aunt's marriage to the prosecutor's brother.

The petitioner's claim is without merit.

### Claims 9, 10, and 11: Procedural Default

The petitioner's ninth, tenth, and eleventh claims were considered by the Kentucky Court of Appeals when it affirmed the denial of his RCr 11.42 motion.  In his motion for summary judgment, the respondent argues that the claims are procedurally defaulted because the petitioner failed to file a motion for discretionary review with the Supreme Court of Kentucky of the affirmance of the denial of his RCr 11.42 motion by the Kentucky Court of Appeals (Docket Entry No. 11, p. 24)

The magistrate judge concludes that the authorities relied upon by the respondent is of questionable validity in light of changes in Kentucky law.  Kentucky Rules of Criminal Procedure (RCr) 12.05 provides that it is no longer necessary to file a motion for discretionary review with the

12

Kentucky Supreme Court to exhaust state post-conviction remedies.  See *Adams v. Holland*, 330 F.3d 398, 401-403 (6th Cir., 2003) (discussing the "opt-out" dicta in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), in the context of a Tennessee rule nearly identical to RCr 12.05).  Therefore, the respondent's argument that the petitioner has failed to exhaust state court remedies as to claims 9, 10, and 11 is unpersuasive.

## Claim 9

The petitioner's ninth claim is as follows (Docket Entry No. 1, page A-1):

> Petitioner was denied his constitutional rights to effective counsel, due process, and a fair trial under the 6th and 14th Amendments of the United States Constitution when both trial attorneys, Hon. James Carter and Hon. Renae Tuck, failed to perform adequate investigations of all witnesses requested by petitioner and all witnesses of the Commonwealth, rendering both attorneys incompetent during such mechanisms as cross-examinations, closing arguments, direct, and re-direct etc.

Specifically, the petitioner objects to counsel's treatment of the following witnesses: Andrea Vernon, Raymond Thomas, Brian Harris, James Foster, Diane Harris, and Jamal Brown. In affirming the denial of his RCr 11.42 motion, the Kentucky Court of Appeals found that the claim is without merit for the following reasons (2007 WL 2019750):

> Willis [i.e., the petitioner] next contends that his counsel was ineffective in cross-examining witness Andrea Vernon and "clarifying" her testimony. Vernon testified that she was in the vicinity of Diane Harris's apartment on the evening of April 12, 1995, when Willis drove up and parked his car facing the apartment. According to Vernon, she heard Willis say something to Brown, and then she saw Willis walking toward him. When she heard shots fired, she retreated into the apartment. When she came back outside, Willis was gone and Brown was on the ground. Willis claims that Vernon gave "vastly conflicting" testimony because she also indicated that she did not see the shooting. He notes that unlike other witnesses, she did not recall that Willis said, "How do you want it, motherf * * * * *?" Willis argues that his counsel should have done a better job pointing out these inconsistencies in questioning Vernon.
>
> After reviewing Vernon's testimony at trial, we fail to see the alleged contradiction. It is entirely possible that Vernon could have heard an argument and shots being

13

fired without seeing exactly what happened. Moreover, from our review of the record as a whole, we fail to see how this testimony is substantially inconsistent or in conflict with that of the other witnesses at trial. Vernon testified that Willis got out of his car and said something to Brown; then shots were fired. Every other person who witnessed the incident in question testified to the same general facts. We also note that Willis fails to point out that his counsel ably attacked the credibility of Vernon's testimony. He was able to elicit an admission from her that she was "strung out" on crack cocaine and alcohol at the time of the shooting and that she had not slept for four days. She also admitted that she had seen Brown carrying a gun on a number of occasions in the past-evidence that supported Willis's claim of self-defense. Consequently, we fail to see any evidence of deficient performance as to this witness.

Willis next argues that his attorneys were ineffective during closing arguments in failing to address the allegedly "false testimony" of witness Raymond Thomas. He claims that Thomas "essentially lied during trial and twisted the story around to make appellant appear to be the aggressor and the villain." However, Thomas's testimony was consistent with that of other witnesses at trial. This argument (and Willis's complaints as to all witnesses in general) essentially amounts to an expression of his dissatisfaction with the fact that Thomas testified to a version of events different from his own. He claims that counsel had a duty to develop or manipulate this testimony to reveal a favorable outcome; i.e., the "truth" according to Willis. We do not agree, and we find no deficiency on this point.

For similar reasons, we reject Willis's contention that his lawyers were deficient in their examination of witness Brian Harris. Willis argues that Harris also gave false testimony at trial. He cites two statements that Harris allegedly gave to the police indicating that he was not at the scene of the shooting when it occurred. However, Willis admits that there is nothing in the record to support these alleged statements other than his own assertions that they had been made. The record reflects instead that Harris testified-consistently with other witnesses-that Willis shot Brown and Bonner with a black automatic handgun after getting out of his car. We also note that defense counsel ably elicited testimony from Harris about the previous arguments between Willis and Brown as well as the threats made by Brown towards Willis. This testimony was consistent with Willis's theory of self-defense. Consequently, there was no deficiency of counsel's performance with respect to this witness.

Willis next argues that his attorneys were ineffective because they did not present evidence concerning James Foster. He claims that Foster gave a statement to police indicating that he saw Willis driving a truck bearing Chicago tags and gang signs on the night of the shooting. One of Willis's attorneys testified at the evidentiary hearing that he did not introduce evidence of this statement because it was "ridiculous" and he did not think anyone would believe it. We agree. The statement was inconsistent with the testimony of every other witness at trial who placed Willis at the scene of

> the shooting. Additionally, it would have tended to contradict Willis's claim of self-defense and would have injected the detrimental element of associating Willis with gang activity. Accordingly, we believe that the decision not to introduce the statement made by Willis's counsel falls within the realm of "sound trial strategy" and does not reflect deficient performance. See *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Moore v. Commonwealth*, 983 S.W.2d 479, 482 (Ky.1998).
>
> Willis also complains that he was prejudiced by the performance of his attorneys because they did not interview or depose Diane Harris, whom he characterizes as "the central figure in the case" because she was "the sole reason for appellant's involvement" in the events leading up to the incident in question. Mrs. Harris was the mother of witnesses Brian and Fidel Harris, and the shooting took place in front of her residence. She died of cancer prior to trial and was, therefore, unable to testify. Both of Willis's attorneys agreed at the RCr 11.42 evidentiary hearing that Mrs. Harris's testimony would have been important. However, beyond Willis's vague assertions that Mrs. Harris was allegedly the motive for his involvement in the events in question, he presents no specific argument or reason as to why her testimony would have been so crucial to the case as to merit reversal. Fidel Harris testified that Willis was like a "big brother" to him and that he had a close association with Mrs. Harris. Willis himself gave testimony about his relationship with the Harris family. Consequently, we must conclude that any testimony that might have been given by Mrs. Harris as to her association with Willis would have been cumulative in nature and likely would not have changed the result at trial. Therefore, this argument must fail.
>
> Willis next raises a number of complaints as to testimony given by witness Jamal Brown. None of these allegations merits extensive discussion. We simply note that none of them remotely supports the argument that "counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Haight*, 41 S.W.3d at 441.

For counsel to be ineffective, counsel must have performed in an objectively deficient manner and the deficient performance must have been prejudicial. See *Strickland v. Washington*, 466 U.S. 668 (1984). The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

## Claim 10

The petitioner's tenth claim is as follows (Docket Entry No. 1, page A-3):

> Petitioner's 6th and 14th Amendment rights under the U.S. Constitution were violated when both trial attorneys failed to object to the prosecutor using abusive terminology towards petitioner, misstating evidence, and giving his opinion regarding the veracity of his witnesses during trial.

In affirming the denial of his RCr 11.42 motion, the Kentucky Court of Appeals found that the claim is without merit for the following reasons (2007 WL 2019750):

> Willis also argues that his attorneys were deficient because they failed to object to certain statements made by the Commonwealth during its closing argument. Specifically, Willis contends that counsel should have objected to the Commonwealth's assertions that Brown had "humiliated" him and that "no witnesses saw Deandre Brown with a gun."
>
> As to the first assertion, a number of witnesses testified that Brown and Willis had had confrontations in the past and that on one occasion, Willis refused to fight Brown following a challenge. Therefore, we agree with the Commonwealth that the first assertion as to humiliation "was simply a reasonable comment on the evidence, well within the limits of acceptable conduct." *Maxie v. Commonwealth*, 82 S.W.3d 860, 866 (Ky.2002). Defense counsel's failure to object to it did not constitute ineffective assistance of counsel. As for the second assertion concerning the gun, Willis complains that multiple witnesses testified that Brown had a gun on the day of the shooting. However, there was no evidence presented that Brown had a gun at the time of the shooting. No gun was found on Brown's body, and no witness testified that Brown was armed when he was shot. Accordingly, we again find that this observation by the Commonwealth was a reasonable comment on the evidence. The matter was fully presented to the jury for its resolution of any implied contradictions. We find no deficiency by counsel.

The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents.

## Claim 11

The petitioner's eleventh claim is as follows (Docket Entry No. 1, page A-4):

> Petitioner's due process, fair trial, and effective counsel rights, under the 6th and 14th Amendments of the U.S. Constitution were violated when lead attorney, Hon. James Carter failed to deliver an effective closing argument demonstrating petitioner's defense.

In affirming the denial of his RCr 11.42 motion, the Kentucky Court of Appeals found that the claim lacked an adequate factual basis for the following reasons (2007 WL 2019750):

> Willis contends that his counsel rendered ineffective assistance by failing to present an adequate closing argument. He provides no specific basis for this contention, offering only general assertions that counsel "failed to address adverse testimony and such," "allowed incompetent evidence to become the law of the land," and "allow[ed] eyewitnesses to lie and embellish testimony, subsequently making appellant appear to be the initial aggressor as well as a senseless killer." Claims for post-conviction relief must be supported by specific facts. See RCr 11.42(2); *Skaggs v. Commonwealth*, 803 S.W.2d 573, 576 (Ky.1990). Therefore, a "[f]ailure to provide factual support as required by RCr 11.42 provides the basis for summary dismissal of that part of his claim." *Sanders v. Commonwealth*, 89 S.W.3d 380, 390 (Ky.2002).

The magistrate judge concludes that the state court's adjudication of the petitioner's claim was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedents; nor did it involve an unreasonable determination of the facts in light of the evidence presented to the state courts. Furthermore, to the extent the petitioner attempts to supplement and buttress the factual basis for his claim in the present petition, the attempt must fail because that claim was not fairly presented to the state courts, and it is now procedurally defaulted. "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir., 2003) quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Particularly important in this matter is that to be "fairly presented" the federal ground must also be presented under the same theory as presented to the state court. See *Caver* at p. 346.

**Claim 12**

The petitioner's twelfth and final claim is that "[t]he cumulative errors of both attorneys, if not individually, surely from a collective standpoint warrant relief under the U.S. Constitution" (Docket Entry No. 1, page A-4). The magistrate judge concludes that the claim is without merit because he has failed to show any errors to accumulate. Furthermore, "the law of this Circuit is that cumulative error claims are not cognizable on habeas." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir., 2006).

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the motion of the respondent for summary judgment, or alternatively, to dismiss (Docket Entry No. 11) be GRANTED and that the petition pursuant to 28 U.S.C. § 2254 be DENIED.

18

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).